Good morning, Your Honors. My name is Rule Walker. I'm counsel for Appellant Douglas Dees, and I would like to reserve five minutes for rebuttal, and I understand it's up to me to watch that. First, Your Honors, let me apologize if I am slower today than one might normally expect. I'm dealing with a poison oak infection, and the medication that I have to take for it. Sorry about that. That's all right. Your Honors, Appellant respectfully submits that the equitable heart of this appeal is embodied in two questions. First, when an unsophisticated Nevada resident and citizen visits his Nevada doctor in the doctor's Nevada offices to initiate a doctor-patient relationship that is indisputably grounded in those Nevada offices, with no record evidence that California was even mentioned in any context at the time of contract formation, should a purported choice-of-California law clause in the printed standard form agreement with small type be enforced or be found void for unconscionability? And the second question is, should the district court have resolved the latent ambiguity whether the parties ever actually intended to make a choice-of-California law when the language of the relevant clause identified by the doctors as containing the standard, the choice-of-law clause, is identical to a California statute that has nothing to do with a choice-of-law? And it was drafted by the California legislature clearly with no intent, and it has never been interpreted as being a choice-of-law before. May I ask you a question? Yes. This is a really strange situation. Yes, Your Honors. So we've got a one-page agreement that's labeled an arbitration agreement. There's no sort of cosmic agreement. It's not like, say, in Williams, the insurance, an insurance policy that has within it a choice-of-law clause and an arbitration clause or whatever. Yes. So we've got an arbitration agreement. So what is the choice-of-law principle that guides the question of the choice-of-law that applies to that agreement? All right. Because it looks to me like what the magistrate judge did was to use the choice-of-law provisions in the agreement to bootstrap itself into saying California law applies. Yes, Your Honor. And it confuses me. So any guidance you can give on that, I would appreciate. I understand that, Your Honor. I've struggled with that a bit for years. Your Honors, the all parties agree that the starting point is that the law of the forum applies. Yes, yes. And Nevada law. And Nevada law. Yes. So the question is what would a Nevada court do in this situation? And the magistrate, and we believe that's the correct analysis at this point. Sure. And then, so the question is, is the only question before the district court and before the magistrate, therefore, is should it be sent to arbitration? And in order to resolve that question, one has to decide the unconscionability of the agreement as a whole. And then the question arises what, under what law of unconscionability is that larger question to be decided? There is, at least from one viewpoint, a choice-of-law in this contract. So the validity of the choice-of-law clause has to be decided under Nevada law, because there has been no, because there has been no choice-of-law yet. Go ahead. Okay. Let me ask this. You've got sort of two things going on here. One, you've got the motion to compel under this agreement. Yes. But you have a lawsuit that's filed, which is a lawsuit for malpractice. Yes. So does one ignore the law that's going to apply to the lawsuit in general and simply ask the question of what law applies to the unconscionability or enforceability of the arbitration agreement? Well, the only question before the district court is whether this should be sent to arbitration or not. So it seems to me that then a Nevada court would ask, well, do I, under what law do I decide the validity of the arbitration provisions? And because we're still in the law of the forum, they would look to the choice-of-law clause, first of all, to see whether it would apply to a contract formation issue. If it, one could choose the choice-of-law that would say only to the substantive dispute and not to the, not to formative issues. And that's, if the choice-of-law clause is not universal in its scope, then it should be applied only in the areas that they said, this is what we want the law to govern. In this contract, if you believe that these are choice-of-foreign-law clauses, it does say that the parties agree that provisions of California law applicable to health care providers shall apply to disputes within this arbitration agreement. Well, it seems to me you can't bootstrap up. I mean, you can't start inside an agreement whose enforceability itself is at issue. Yes. You've got to first ask, is that agreement enforceable, right? Yes. Well, yes. The starting point, it's kind of like those Russian dolls where things are nested inside of each other. In order to decide the validity of the arbitration agreement, this is really only an arbitration agreement. In order to decide the validity of it, you have to say, well, then you're dropped down to a subsidiary issue, which is what forum's law should decide the enforceability of the entire agreement. And then one becomes, the judge becomes interested in whether the choice-of-law provisions are enforceable. No? Is that, am I not, does that make sense? No. I think it's a question of, like you say, do you start with the big doll or do you start with the little doll? And that's the question here. But if you, let's march through. If the judge says, okay, here we are, I'm a Nevada judge, so I'm going to apply Nevada choice-of-law provisions, Nevada law, to see if this is an enforceable agreement so I can determine whether this goes to arbitration. Yes. Okay. So if the judge goes that route, what's the answer? I'm sorry. I didn't understand the last part. If the judge goes that route, I'm here in Nevada, I'm trying to see if this is an enforceable agreement, because if there's an enforceable arbitration agreement, I'm going to send it to arbitration. Yes. So what is the judge's analytical process at that point? I believe that the analytical process, Your Honors, is, first of all, you say, in order to decide the arbitrability of the entire, whether this goes to arbitration, the next question in the logical analysis that I come to is, what law do I apply to decide that? The default position is Nevada law, because we're still in a Nevada forum. But there are arguably choice-of-foreign-law clauses in here. Judge McKeown got you past that. Right. She is assuming, asking you to assume, that Nevada choice-of-law principles apply to whether the arbitration agreement is enforceable. If so, then what? What do you do? Well, I'm sorry. I must not be getting my point across, because what I'm saying is that you the ---- She's asking for the answer. If you apply Nevada choice-of-law rules, where does it lead you? Well, okay. I believe that it first leads you to the, to Seavers. That's what I was, I'm sorry. Okay. I'm sorry, Your Honor. I didn't quite get what you were asking for. Yes, it leads you to Seavers, which establishes under what conditions a Nevada court will enforce a choice-of-law clause. And the first requirement is that there is a substantial relationship with the transaction. And the second requirement, both of which are essential, is that the agreement is not contrary to Nevada public policy. In Williams ---- On that, on the Seavers substantial relationship test, you say the substantial relationship must be to the what? To the transaction. What's the transaction? Well, the transaction is the doctor-patient relationship. Okay. At the time, at the time of contract. At the time of contract. At the time of contract formation, yes. You're excluding the subject matter of the lawsuit. You're just focusing on the arbitration agreement. Oh, yes, yes. Yes, yes. So the transaction is the arbitration agreement. Yes. All right. Okay. Thank you. You clarified about that. You're actually not saying the transaction is the arbitration agreement. You're saying the transaction is the doctor-patient relationship as established at the moment they hand over this arbitration. Yes. And the agreement says that it applies to the entire doctor-patient relationship. So that arguably is the transaction. And under Williams, Seavers talks about substantial relationship. Williams v. USAA, another Nevada Supreme Court case, specifies that that requires the ---- that we look at the expectations of the parties at the time of contract formation. And there is absolutely no evidence in the record that California was even mentioned at the time of this contract formation, especially since it's undisputed the agreement was signed before Mr. Deese ever saw a doctor. And there was never any discussion of surgery. And the doctors have never said we told Mr. Deese the surgery would be in California. And even if they did, because he signed it before he talked to them, that wouldn't matter. And Mr. Deese has said that he didn't understand this agreement, that he had no expectation that California law would apply. The only contacts with California that the doctors are able to point to is the argument that the two surgeries took place in California, which there's no evidence that the location in California was ever discussed with Mr. Deese. They say that their private residences are in California, but their private residences have no relationship with the transaction. If you're right about the tipping point, there's no question about all that. Okay. Why don't you go on?  Okay, great. Let me see if there's anything else I want to say here. As far as the other side argues that Mr. Deese didn't really say that he didn't understand it. All he said was that it wasn't explained, and the magistrate agreed with that. I believe that a fair reading of Mr. Deese's declaration indicates that he was talking about his understanding. He says, particularly, I didn't understand these clauses here. And it's not unusual to have. Furthermore, the terms of the purported choice of law clause are such that only a very experienced lawyer would be able to sort this out. It refers to California statutes. He would have no idea what effect this had on him. It's in very small print. The article that they say contains the choice of law clause when they first raised this is Article I, and yet there's no heading in Article I indicating the choice of law clause. We submit that this is actually the same arbitration agreement that's used throughout California for California patients seeing California doctors in their California offices. It can be read that way. And so at the very least, there's an ambiguity in its interpretation whether it's a choice of foreign law. The doctors offered no evidence of what their intent was. Mr. Deese denied that it was his intent to choose foreign law. And any ambiguity in a contract, especially a printed standard form agreement, is to be interpreted against the party that offered that agreement. And therefore, as a matter of law, the magistrate or judge was required to hold that this contract did not contain a choice of foreign law. If you're right, then what's next? Then, then, under if there's no choice of foreign law clause in here, then you go to Nevada law to interpret the unconscionability of the entire agreement. Which is what I thought we were just talking about. Well, the same, basically the same. Isn't that the key issue? That here we've got a Nevada patient going to the office of a doctor who is practicing in Nevada. Yes. Who gives this form to him. And the question is, in that transaction, as I understand your argument, in that transaction between the patient and the doctor who is practicing in Nevada, is whether this document that was given to him to sign is valid. Yes. It isn't valid. We've got no choice of law question. It's Nevada. It's the law of the foreman. Well, Your Honor, you could come at it that way. In all of my thinking about this case, I've tried to follow the logical analysis that seemed best. I think probably that approach to it works just as well. I believe the most logical analysis would be to decide whether the choice of foreign law clause is valid first. But that's another way to come at the same thing. Well, if the agreement is not enforceable, then neither is anything in it, including the choice of law clause.  I'll, Your Honor. I don't understand. You're starting backwards. It's like saying is punitive damages eligible. I completely go along with that if that seems like the most. Let me ask my question again. Yes. If you are correct, if you're right, if you're right, then what do we do? Okay, Your Honor. I believe you have two choices. One is to say that the contract is unconscionable as a whole, arbitration is not required. Okay. Do we remand? Yes. Do we reverse? Do you send it back for a trial? You vacate the arbitration award. Yes. Purely practical. Yes. What's the mandate line of our opinion if you win? Yes, Your Honor. There was no evidence submitted that supports that it was a valid agreement, that it was a choice of foreign law, or that it's not unconscionable. And as a matter of law, we are entitled to either a trial or arbitration under Nevada law. If you were writing the last sentence in our disposition, what words would you use? Thank you, Your Honor. Reverse with instructions to go to trial. Yes. To go to trial. Yes. In the Federal District Court. In Federal District Court under Nevada law. What would be the legal basis for us to say your second alternative, arbitration under Nevada law? Your Honor, there are slightly different issues about whether it was unconscionable as to the arbitration agreement as opposed to the conflict of law clause. So it is possible the Court could decide that it should be determined under Nevada law, but still that the arbitration was agreement. So you could choose to send it to arbitration with a specification that it. Why would that be the case if it's relying on an agreement to send to arbitration that is not enforceable? Your Honor, I'm trying to give the courts as many options as I can. Let's give us an option that makes some sense. Yes, Your Honor. It would be reverse with instructions to go to trial under Nevada law. Thank you. I'm sorry for my confusion. Let's hear from Ms. Greer. Yes. Thank you. May it please the Court. I'm Denise Greer representing the physicians. I was worried whether I'd even be able to reach this podium, so I think I made it. And I'll ask you to keep your voice up, too. Oh, I'm sorry. It's hard to hear you. Thank you. Boy, nobody's ever told me that one before. It's interesting. When you look at the district court's analysis where they said, because there's a California choice of law clause in here, California applies, it's valid under CCP 1295, and it's fine. I did have a little bit of a problem with that, even though that was in our favor, because I think it's true. They kind of bootstrapped it from what was within the agreement. And that's why in all the briefs that we did, starting six years ago, I also analyzed it under Nevada law. What would a Nevada court do with this agreement that was put in front of this patient that said physician-patient arbitration agreement? Would it be enforceable? And I think the answer as a whole is yes, it would be enforceable, because you don't have to go to the California law regarding the safe harbor clause or anything like that. All you have to do is say, is look at whether or not that kind of a contract with a doctor is within the reasonable expectations of the parties, and whether it's adhesory. Well, how could it be in this case where you have a Nevada guy going into a Nevada physician's office with no conversation about California and no apparent connection to California, being handed an agreement without explanation, that subjects him or appears to subject him to California law? How could a Nevada patient in those circumstances reasonably expect that his treatment by this Nevada physician in Reno is going to be governed by California or Mars or Vermont or some otherbody's law other than Nevada? Well, it's interesting, because in this case, I think the cities are 22 miles apart. And I have a feeling that it's a state apart, and the statute of limitations and the cap and the payment option miles away. Well, Your Honor, it's interesting that one of the big issues is what the parties' expectations are at the time of contracting. And, you know, we've always analyzed it in terms of the fact that when this patient came in to see this doctor, who was right near the California border and also had offices in California, the agreement clearly said that I'm going to agree to give up my right to a trial by jury, and I'm going to agree that California law applies. I mean, he did that voluntarily. He signed that agreement that said that. And what's interesting is that I agree that the controlling law on this is the Seavers case in Nevada, the Supreme Court case. And that case said that the expressed intent of the parties in entering a choice of law contract controls as long as the parties acted in good faith, as long as the parties were not seeking to evade the law of the State in which they contracted. And there's a substantial relationship with the transaction, which I submit is the entire physician-patient relationship, but especially the fact that this is a surgeon. He went to the surgeon to get care, to get surgery. And the surgeries of which they complain in the malpractice suit occurred in California. Sotomayor, the fact that there's no evidence in the record that that was communicated by the physicians or the physician's office to Deese. That's true. And he doesn't. Everything is Nevada. The only thing that's in California is a piece of paper that he's handed which was not explained to him. So, you know, most people have no idea. You go in, you sign the HIPAA rules, you sign this, you sign that. And, you know, you're signing everything they put in front of you. Why? He wants to see, you know, Dr. Billy. And basically, it was a take it or leave it adhesion contract. Either sign this or you don't see Dr. Billy. That's what he said. Well, it was not take it or leave it. I know that that's how it's been characterized. But the fact, and the district court found, and cases that I've presented this agreement in, admittedly, in California, have all held that the 30-day revocation clause takes it out of the. It works better in California than it does in Nevada, because that's what the California legislature said. But here's what Mr. Deese says. My understanding, I had to sign the arbitration agreement before I could see Dr. Billy. He says nobody explained it to him. Particularly, I was waiving my right to a jury trial, and that I would be required to pay my share of expenses and fees to the arbitrator, and that the agreement applied to a later surgery. I mean, the fact that the surgery is in California is irrelevant at that point, because he doesn't even know that. Well, what is relevant, Your Honor, is the fact that he signed an agreement that had a California choice of law in it. And the case that the plaintiff, that the appellant cites, the Williams case, didn't have an agreement where there was an actual choice of law clause. When there's an actual choice of law clause, that is readily ---- I can't see how that makes any difference if we're talking about whether this document in effect was an adhesion document that was given to him without explanation, without saying that, you know, if I'm going to do any surgery, I'll be doing it in California. You understand that, don't you? None of that. I just got handed this document that, in effect, waived quite a lot of the rights of the patient, and no explanation. Granted, Your Honor, there was no explanation given, and we will concede that. However, that agreement was carefully crafted by the California legislature in order to advise laypeople of what they're giving up. It's the wrong state. But it still was drafted in such a way to say, look, this is an agreement between you and your physician that if you want to sue me, you're going to agree that we're going to go to arbitration and not to trial. So it's not something that necessarily required explanation, especially since it's to tell the patient what it is they're doing. So in that sense, it's not necessarily an adhesion contract, and it's not outside of the expectation of a patient that when they go to a doctor that they might be asked to sign something like that. And the fact that they're the patient... The way you phrased that is interesting, that they might be asked to sign something like that. He was never asked. He was just handed this thing. No explanation. No explanation that I would be performing surgery in California and that California law would apply and that that might include a different statute of limitations. No explanation like that. Just a document. A document that actually said those things except for the surgery in California. It said California law will apply. There's no evidence that he didn't have a chance to go up to the window and say, what is this I'm being asked to sign? Do I have to sign this in order to see the doctor? And the courts have really looked at that, as did the district court, as to whether or not it could be characterized as an adhesion contract. The district court found that it wasn't an adhesion contract, that the patient had 30 days to rescind it. That's a very important thing. Our evidence is that the patient was given a copy of it, the NCR yellow paper underneath it, and that he had 30 days. Sotomayor. It doesn't show that if he rescinded it, he could still nevertheless get treatment from Dr. Billy. But there's nothing to show that he couldn't either. Well, but it's a burden to show that, that if he had used the window to rescind, he could still have gotten treated by this clinic. I mean, that's what the evidence is. The only evidence is to the contrary. I don't have a benchmark. Is it Pepper? That's what Pepper says. Yes. And the only evidence is to the contrary in the Dees affidavit. So in terms of what we have on the table. Well, actually, what we have on the table, Your Honor, is the fact that the office manager said that with every single patient, we tear it off, we give it to them. The agreement's not there. Also, the other evidence is the contract itself, where it says, by my signature, I agree that I have received a copy. No question of that. But so what does that show? Pardon? What does that show? I don't know that he got that. Well, the fact that he has a copy to take home with him and has 30 days to decide whether or not he's going to. But Pepper, how do you deal with Pepper? I mean, it seems to me. There was no revocation clause in Pepper, Your Honor. They didn't turn on that. There was a revocation clause there, that's true, but the case didn't turn on it. And there are a ton of cases, including California, which say, you know, if you can't go back to that clinic, the revocation clause doesn't have any meaning. So if you say, okay, I'm not going to sign this agreement, unless it's clear that you can nevertheless get treatment there, then isn't it adhesive? Well, but there's other cases, Your Honor, that discuss the fact that, and I don't have the sites right in front of me for the California cases that have discussed this, but what they've said is there's no showing that this patient couldn't have gone to another general surgeon to get care. I mean, it's not as though that's the only general surgeon in town. So, I mean, there have been cases that have analyzed it on that ground. You know, we have to step back and look at the fact that this is an adult who enters into agreements, who signs insurance contracts saying I want my doctor to be paid by my insurance company. That's valid. He can read. There's no evidence that he couldn't. And he signed it. He agreed to it. We also believe that with the expectations at the time of contracting. He had been handed the same piece of paper, but it said Vermont law applies. Well, I mean, serious question. Right. And I thought about that. But, obviously, the fact that the doctors operate also in California. Now, he didn't know that at the time of contracting. Right. So, I mean, at the time of contract, what's the difference? I mean, he lives near Lake Tahoe. Okay, fine. But what's the difference between saying Vermont law will apply and California  law? Well, if we were in court now and I was trying to enforce a Vermont, try to get this law decided to be Vermont, then I don't think I would have a prayer, because there's absolutely no relation. I don't either. So what gives you a prayer here? Because of the fact that the subject of the lawsuit. The stuff that Mr. Deese didn't know about. Right? But, I mean, the transaction or the substance is not yet California. I mean, I understand your client's practical perspective, because they're practicing on the border and they're trying to service clients from both States. So I understand that, but it doesn't really solve the issue from the patient's point of view. I mean, they've made an expedient business decision to give everybody the California contract. But the fact of the matter is they're licensed to practice in Nevada, correct? And California. And California. Yes. And Nevada. Yes. And when they see him, they are acting as a licensed Nevada physician, not a California physician. So, you know, they have to comply with Nevada law. And there may be ways to do that and still use their agreement. I don't know. But what concerns me here is, you know, he's referred here to go to that doctor. And by his doctor, there's some urgency about his situation, obviously, at least they're talking about in here. And nobody explains anything to him. I mean, it has all the elements of one of those law school exams, doesn't it, in And so it just seems to me that if we're forced to go under Nevada law, which we would be, I'm still waiting to hear from you what you think the best argument is as to why it's not a contract of adhesion. I think under the Pepper case, under Nevada law, that as long as it falls within the reasonable expectations of the patient, even if it were an adhesion contract, as long as it falls within the reasonable expectations of both parties, it doesn't limit somebody's liability. It gives you a right to back out of the agreement if you don't want to do it, even after you sign it, even after the doctor has seen you and has agreed to treat you, you can back out of that agreement. That 30-day revocation clause takes it out of the Pepper case and, we believe, creates a nonadhesory contract. And I think the district court was right in making its decision that this was an enforceable agreement, the doctor had the right to rely on it, and that because of that, anything contained within the four corners of that agreement is enforceable. And I would just submit on that. Okay. Thank you. Thank you. Anything further? I'm going to submit here. Thank you. Okay. Thank you. The matter just argued will be submitted and will stand adjourned for the morning of the week.
judges: Hug, Rymer, McKeown